## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| **CHRISTOPHER D. VAN CURAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil no. 2:12-cv-047-NT** |
| ) | |
| **GREAT FALLS INSURANCE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER ON MOTION TO STAY
### AND COMPEL ARBITRATION

Defendants Great Falls Insurance Company ("**GFIC**"), Great Falls Holding Company ("**GFHC**"), Citadel Group Representatives, Ltd., Citadel Reinsurance Company, Ltd., Citadel Risk Management, Inc., Citadel Risk Services, Inc., (together, "**Citadel**"), Combined Management, Inc. ("**CMI**"), Robert Murch, Scott Penwell, Anthony Weller, Arthur Coleman, Jack Ignatowitz, and James Clemons (together, the "**Defendants**") have moved to stay the suit filed against them by Plaintiff Christopher D. Van Curan and to compel arbitration of the dispute. For the following reasons, the Court **GRANTS** the Defendants' motion.

### I. BACKGROUND

According to the Complaint, Christopher Van Curan, a 79-year-old bank and insurance executive, was terminated on April 17, 2011 from his employment as President of GFHC and as President and CEO of GFIC, after having worked since April of 2008 to launch these companies, largely without compensation. Citadel and

CMI were investors that, in May of 2010, purchased a 60% interest in GFHC and also entered into a quota share agreement with GFHC / GFIC, allegedly making GFHC / GFIC and Citadel / CMI a single, integrated enterprise with respect to Van Curan's employment.

Van Curan alleges that Citadel and CMI, including individual Defendants Weller, Coleman, Ignatowitz, and Clemons, instigated his termination in 2011, a mere four months after GFIC finally received its license, commenced operations, and began paying him a salary. Van Curan claims that Penwell and Murch also aided, abetted, compelled, or coerced GFHC / GFIC to terminate his employment. Van Curan alleges a number of common law and federal and state statutory claims against the various Defendants sounding in age discrimination, tortious interference with his employment contract, fraud, and quantum meruit. Van Curan does not allege breach of contract.

At the time of his termination, Van Curan was covered by an employment agreement executed on October 31, 2009, which had the practical effect of superseding an earlier agreement executed on July 31, 2008. *See* Docs. 13-1 and 13-2 (the "**Employment Contract**").[1] The signatories to the Employment Contract were Van Curan and Chairman Robert Murch on behalf of GFIC and GFHC. Although the Employment Contract was signed in 2009, it was set to commence "on the date the Insurance Company receives a license from the Maine Bureau of Insurance" and was to last for a period of three years from that date. Accordingly,

---

[1] For purposes of this litigation the two employment contracts are alike in all material respects, and for ease of reference the Court will refer only to the October 31, 2009 contract which appears to be the contract in effect at the time of the Plaintiff's termination.

Van Curan's expectation at the time of his termination was that he was entitled to salaried employment with associated perquisites and stock options for a period of at least an additional two years and eight months.

The Employment Contract contains a release agreement that Van Curan executed contemporaneously with the Contract, which releases the Great Falls companies from, *inter alia*,

> any and all claims . . . under any federal, state, local or foreign law, that the Releasors may have, or in the future may possess, arising out of (i) the Executive's employment relationship with and service as an employee, officer or director of the Company, and the termination of the Executive's service as President and CEO . . .
>
> In further consideration of the payments and benefits provided to the Executive under the Agreement, the Releasors hereby unconditionally release, and forever discharge the Company, and each of its officers, employees, directors, shareholders and agents from any and all Claims that the Releasors may have in connection with his termination of employment, arising under the Federal Age Discrimination in Employment Act of 1967, as amended, and the applicable rules and regulations promulgated thereunder ("ADEA").

Employment Contract, Exhibit B (Doc. 13-1 at p. 11)(the "**Release**").

The Employment Contract also contains an arbitration clause which provides in part:

> all disputes, disagreements and questions of interpretation regarding this Agreement (except for any enforcement sought with respect to Section 7 [Plaintiff's covenant not to compete], 8 [Plaintiff's non-disclosure promises], or 9 [Plaintiff's promise to return company property and documents at the termination of his employment], which may be litigated in court through an action for an injunction or other relief, including monetary damages resulting from a breach of any such sections) are to be submitted for resolution in Portland, Maine, to the American Arbitration Association (the "Association") in accordance with the Association's National Rules for the Resolution of Employment Disputes or other applicable rules then in effect (the "Rules").

Employment Contract at section 16 (the "**Arbitration Clause**"). The Employment Contract also contains a choice of law provision naming Delaware law as the operative law for construction of the contract. *Id.* at section 18.

**LEGAL STANDARD**

In *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375-376 (1st Cir. 2011), the First Circuit summarized the principles followed to determine whether a dispute must be committed to arbitration.

> A party seeking to compel arbitration under the FAA must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."

*Dialysis Access Center,* 638 F.3d at 375-376 (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)). Whether a dispute is arbitrable is "typically a question for judicial determination." *Id.* Unless the parties "clearly and unmistakably" provide otherwise, the court must interpret the agreement to determine whether the parties intended to arbitrate any particular grievances. *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, ___ U.S. ___, ___, 130 S. Ct. 2847, 2857, n. 5, 177 L. Ed. 2d 567 (2010)).

> "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). In carrying out this endeavor, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor or arbitration.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)(quoting *Volt Info. Scis.,*

> *Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248 103 L. Ed. 2d 488 (1989)). *See also PowerShare, Inc. v. Syntel. Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)(noting that "federal law undeniably includes a policy favoring arbitration"(citing Volt, 489 U.S. at 475-76, 109 S. Ct. 1248)).

*Dialysis Access Ctr.,* 638 F.3d at 375-376.

For the reasons set forth below, the Court agrees with the Defendants that under the terms of the Employment Contract, the arbitrator retains jurisdiction to rule on the scope of the Arbitration Clause. Further, the Court concludes that because the arbitrator has the power to rule on the enforceability of the Release, the Court cannot address the legality of the Release. Finally, the Court concludes that the non-signatory Defendants are entitled to invoke the Arbitration Clause.

## DISCUSSION

The Defendants bring this motion to stay the case and compel arbitration. They acknowledge that the Plaintiff has not alleged a breach of contract, but they make a two-fold argument regarding arbitrability. First, they claim that, by the terms of the Arbitration Clause, the scope of the arbitrability of the Plaintiff's claims must be determined by the arbitrator. Second, they argue that even if the Court finds that it must decide the scope of the Arbitration Clause, all of Plaintiff's claims fall within it.

The Plaintiff does not dispute the validity of the Arbitration Clause. He does, however, argue that none of his claims come within the scope of the Arbitration Clause, and he argues that the American Arbitration Association ("**AAA**") rules referenced by the parties did not include a provision that gives the scope of the

Arbitration Clause to the arbitrator. The Plaintiff also argues that even if the arbitrator does determine the scope of the arbitration, the Court should declare Van Curan's waiver of future claims in the Release unlawful and strike it from the Employment Contract. The Plaintiff further argues that those Defendants who were not signatories to the Employment Contract cannot invoke the Arbitration Clause.

### A.   The Arbitration Claim Commits the Question of the Scope of Arbitration to the Arbitrator

In *First Options of Chicago v. Kaplan,* the Supreme Court addressed the issue of who, as between the court and the arbitrator, determines the arbitrability of the parties' dispute. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. at 942–45. The Court concluded that this question "turns upon what the parties agreed" about the matter. *Id.* at 943. The Court cautioned, however, that with respect to this question, there is no presumption in favor of arbitrability. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* at 944.

The Arbitration Clause incorporates by reference the AAA's "National Rules for the Resolution of Employment Disputes [the **National Rules**"] *or other applicable rules then in effect.* . . ." Employment Contract, Section 16 (Doc. 13-1)(emphasis added). The name of the National Rules was changed, effective July 1, 2006, to the "Employment Arbitration Rules and Mediation Procedures" (the "**Employment Rules**").[2]  Employment Rules, Rule 1, available at www.adr.org. *See*

---

[2]     The Plaintiff filed a copy of the National Rules which were amended and effective January 1, 2004. (Doc. 14-1). The Defendant provides a copy of the Employment Rules amended and effective November 1, 2009. (Doc. 13-3.)

*also Richert v. Nat'l Arbitration Forum, LLC.,* Doc. No. 09-763 ADM/JJK, 2009 WL 3297565 at n. 10 (D. Minn. October 13, 2009).  The Employment Rules specifically provide that "any arbitration agreements providing for arbitration under [the National Rules] shall be administered pursuant to these [Employment Rules]." Employment Rules, Rule 1, available at www.adr.org.

Since their promulgation in 2006, the Employment Rules have contained a section entitled "Jurisdiction," which states in part, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 6(a). The "Jurisdiction" section of the Employment Rules was in effect at the time the Plaintiff signed both of his Employment Contracts, at the time of Plaintiff's termination, and it remains in effect as of the date of this opinion. Accordingly, at any possibly pertinent time to this litigation, the AAA rules in effect committed the question of the scope of the Arbitration Clause to the arbitrator.

*Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11-12 (1st Cir. 2009) involved an agreement which did not state whether the validity of an arbitration clause was a matter for the arbitrator. It did, however, incorporate arbitration rules containing a jurisdiction rule identical to Rule 6(a) of the Employment Rules.[3] The First Circuit found that the incorporated rules were "about as 'clear and unmistakable' as language can get," and it referred the question of the validity of the arbitration

---

[3]     "The arbitrator shall have the power to rule on his or her own jurisdiction including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 7a of the Rules of the American Arbitration Association (quoted in *Awuah,* 554 F.3d at 9).

agreement to the arbitrator. *Id.* at 11 (citations omitted)(applying *Apollo Computer v. Berg*, 886 F.2d 469, 472-473 (1st Cir. 1989)).

Based on the unambiguous language of Arbitration Clause and Rule 6(a) of the Employment Rules, the Court must conclude that the parties intended that questions of the scope of the Arbitration Clause be referred to the arbitrator.

## B. The Court Cannot Address the Validity of the Release

The Plaintiff also asks the Court to strike as unlawful that part of the Employment Contract which purports to release GFHC / GFIC from any and all future claims regarding his employment. The Plaintiff argues that "the legality of the Release Agreement would be beyond the arbitrator's authority to decide" and that since the arbitrator would be "[u]nable to modify the terms of the agreement, the arbitrator would have no choice but to conclude that Mr. Van Curan waived his right to assert such claims." Objection to Motion to Stay and Compel Arbitration at p. 18 (Doc. 14). On the basis of these assertions, Plaintiff argues that the remedy of arbitration would be illusory unless the Court first strikes the Release. *See Awuah*, 554 F.3d at 13 ("If arbitration prevents plaintiffs from vindicating their rights, it is no longer a 'valid alternative to traditional litigation.'" (citing *Kristian v. Comcast Corp.*, 446 F.3d 25, 37 (1st Cir. 2006)).

Plaintiff, however, does not argue that arbitration is prohibitively expensive, as plaintiffs argued in *Awuah*, 554 F.3d at 13.[4] Nor has the Plaintiff pointed to any provisions in the contract generally or the Arbitration Clause specifically that would

---

[4] Ultimately, the First Circuit in *Awuah* concluded that the plaintiffs had failed to meet the high standard of showing illusoriness.

prevent the arbitrator from deciding the legality of the Release. *Cf. Kristian*, 446 F.3d at 45-47. The arbitrator must first determine if his or her authority extends to arbitrating the Plaintiff's claims. If the arbitrator determines that these claims are arbitrable, the Plaintiff may argue to the arbitrator that the Release is unenforceable and thus no defense to his claims. To the extent the Release is used as a defense to Plaintiff's claims, the arbitrator appears to have authority to consider its legality.

### C. The Non-Signatory Defendants May Enforce the Arbitration Clause

The parties do not dispute that Defendants GFIC and GFHC, as signatories to the Employment Contract, may invoke its Arbitration Clause. The remaining Defendants, however, including Citadel, CFI, and individual Defendants Murch, Penwell, Weller, Coleman, Ignatowitz, and Clemons did not sign the Employment Contract, and the parties dispute whether the non-signatories may invoke the Arbitration Clause.

The Federal Arbitration Act[5] did not displace or change the fundamental principles of state contract law "regarding the scope of agreements (including the question of who is bound by them.)" *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S.Ct. 1896, 173 L. Ed. 2d 832 (2009).  In *Carlisle,* the Supreme Court held that nonparties to a contract could not be categorically barred from

---

[5]     Section 2 of the FAA provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 provides that a court "upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties [to the litigation] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

staying litigation under Section 3 of the FAA, "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . . ." *Carlisle*, 556 U.S. at 629-630 (citing 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th Ed. 2001)). The Court therefore turns to traditional principles of state contract law to determine whether the non-signatory Defendants in this case can invoke the Arbitration Clause.

The parties initially failed to address which state's law should govern. After further briefing, Plaintiff took the position that Maine and Delaware law are the same with respect to this issue and he did not advocate for the law of either jurisdiction. Plaintiff's Supplemental Brief, p. 6 (Doc. 22). Defendants assert that Delaware's law is applicable because it was the choice of law selected in the Employment Contract. *See FR 8 Singapore Pte. Ltd. V. Albacore Maritime Inc.*, 794 F. Supp. 2d 449, 454 (S.D.N.Y. 2011) (whether a non-signatory is bound by a contract is a question "of general applicability to contracts" governed by the contract's choice of law provision). In the absence of any opposition from Plaintiff, the Court looks to traditional principles of contract, corporate law, and equity as articulated by Delaware's courts to determine whether the non-signatory Defendants may enforce the Arbitration Clause.

Delaware courts have employed a broad-based equitable estoppel theory by which non-signatories may compel signatories to arbitrate if there is a close

relationship between non-signatory and signatory defendants, or if the non-signatory's alleged wrongs are intimately founded in and intertwined with the underlying contract obligations or with a signatory's alleged misconduct. *See Ishimaru v. Fung*, Doc. No. Civ. A. 929, 2005 WL 2899680, *17-18 (Del. Ch., Oct. 26, 2005) (unreported); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. Civ.A.2037-N, 2006 WL 2473665 (Del. Ch. 2006) (unreported).[6] The justifications for estopping signatories from denying arbitration appear to be variously: (1) that the non-signatory's enforcement of the contract was foreseeable to the signatory under such circumstances, *Ashall*, 992 A.2d at 1249; (2) that a signatory should not be allowed to "have it both ways" by attributing contract duties to a non-signatory and yet denying the non-signatory contract rights, *Ishimaru*, 2005 WL 2899680 at *18; and (3) that not compelling arbitration under such circumstances would thwart the federal policy in favor of arbitration, *Wilcox & Fetzer*, 2006 WL 2473665 at *5 (citing *Grigson*, 210 F.3d at 527).

The Defendants argue that under Delaware's equitable estoppel theory, and also under agency principles, the non-signatory Defendants are entitled to compel

---

[6]     In *Ashall Homes Ltd. v. ROK Entm't Grp., Inc.*, 992 A.2d 1239, 1249 (Del. 2010), Delaware's Supreme Court addressed whether non-signatories to investment agreements, including officers and directors of the signatories, could invoke forum selection clauses contained within those agreements. The court concluded that "parties 'closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound'" have standing to invoke the agreements' forum selection clauses. *Id.* In support of this conclusion, the court cited to three arbitration clause cases: *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2005) (from which the *Wilcox & Fetzer* opinion took its equitable estoppel test); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993); and *Ishimaru*, 2005 WL 2899680 at *17-18. A Delaware chancery court observed: "This Court treats forum selection clauses 'in the same spirit' as arbitration clauses; thus, the same general principles apply in determining the scope and level of deference to be given either kind of clause." *ASDC Holdings, LLC v. The Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Trust*, Doc. No. C.A. No. 6562-VCP, 2011 WL 4552508, *4 (Del. Ch. 2011) (unpublished).

arbitration. The Plaintiff asserts that the non-signatories cannot compel arbitration because the counts against them are not intertwined with the Employment Contract.

### 1.  *Counts I and II*

Count I of the Complaint alleges age discrimination against GFHC / GFIC, Citadel, and CMI under the Age Discrimination in Employment Act ("**ADEA")**, 29 U.S.C. §§ 621-634. Count II makes the same claim against the same Defendants under the Maine Human Rights Act ("**MHRA**"), 5 M.R.S.A. § 4572.

According to the Complaint, upon execution of the May 2010 investment agreement between Citadel and GFHC / GFIC, these entities became "a single integrated enterprise . . .  with respect to Mr. Van Curan's employment." Complaint, ¶ 27 (Doc. 4-2). The Complaint also alleges that CMI agreed with GFHC / GFIC to co-employ their employees for purposes of administering and managing payroll, benefits, taxes, and other human resources needs. As the result of this agreement, the Plaintiff alleges that CMI also became a joint employer of the Plaintiff, with a right to hire and fire GFHC / GFIC employees and joint liability with GFHC / GFIC for compliance with employment laws, including federal and state anti-discrimination laws.

Because the Plaintiff claims that CMI and Citadel became his co-employers along with the signatory Defendants and alleges employment discrimination against all entities, equitable estoppel applies. The Plaintiff essentially alleges that these Defendants acted together as an integrated enterprise to discriminate against

him on the basis of his age. *See Wilcox & Fetzer*, 2006 WL 2473665 at *5 ("application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.") (citing *Grigson*, 210 F.3d at 527.) Plaintiff cannot claim that Citadel and CMI are responsible to him as his employers for statutory employment violations but deny that they are entitled to the protections of the Employment Contract. *See Ishimaru*, 2005 WL 2899680 at *18 ("One of the primary justifications for estopping a signatory from denying a non-signatory a right to arbitrate is that it is unfair for the signatory to have it both ways by attributing to a non-signatory the duties of a contract signatory for purposes of pressing claims but denying the non-signatory the right to invoke the arbitration clause.")[7]

In so concluding, the Court does not decide whether Counts I and II are arbitrable, a decision left to the arbitrator. Rather, the only issue decided here is that, to the extent GFHC / GFIC are entitled to arbitrate Counts I and II, so too are Citadel and CMI.

---

[7]      In his supplemental brief, Plaintiff points out that the non-signatory Defendants have disclaimed a close interrelationship between themselves and GFHC / GFIC. *See* Supplemental Brief at 7 and exhibits thereto (LePage Affidavit and August 23, 2011 letters attached thereto (Doc. 22-1 and 22-2) (in which counsel for Citadel and CMI assert in a letter to the Maine Human Rights Commission that Plaintiff was not employed by these entities and that their existence was sufficiently distinct from GFHC / GFIC that they cannot be held liable for the actions of GFHC / GFIC.)) Plaintiff asserts, therefore, that equity should prevent CMI and Citadel from claiming a right to enforce the Arbitration Clause. The door does not swing both ways, however. The question of whether non-signatory defendants are engaged in "substantially interdependent and concerted misconduct" is determined by the signatory's allegations, not by non-signatories' denials thereof. *See Wilcox & Fetzer*, 2006 WL 2473665 at *5, *Ishimaru*, 2005 WL 2899680 at *18.

## 2. *Count III*

Count III alleges that Defendants Citadel, Weller, Coleman, Ignatowitz, Clemons, Penwell and Murch engaged in unlawful coercion under MHRA Sections 4553(10)(D) and 4633(2) by aiding, abetting, compelling, or coercing GFHC / GFIC to terminate the Plaintiff's employment on account of his age. All of the individual Defendants are alleged to have positions on the boards of directors of GFIC, GFHC or both.[8]

In their capacity as directors, and insofar as they properly direct the corporation's actions, the individual Defendants essentially *are* GFHC / GFIC and their actions *are* GFHC / GFIC's actions. *See Arnold v. Soc. For Sav. Bancorp. Inc.*, 678 A.2d 533, 539 (Del. 1996).[9] Directors of companies that are signatories to an agreement may invoke the agreement's arbitration clause. *See Ashall,* 992 A.2d at 1249 (Del. 2010) (directors and officers of a company are closely related enough to the company to invoke a forum selection clause may invoke the agreement's forum

---

[8]     The Complaint alleges that Weller is the Managing Director of Citadel Group Representatives, Ltd., as well as being a member of the Board of Directors of both GFIC and GFHC. Coleman is alleged to be both President of Citadel Risk Management, Inc., and also a member of the Board of Directors of both GFIC and GFHC. Ignatowitz is alleged to be Executive Vice President of Citadel Risk Management, Inc., and also a member of the Board of Directors of both GFIC and GFHC. Clemons is alleged to be paid by Citadel to sit on the Boards of GFIC and GFHC to represent Citadel's interests. Penwell and Murch are alleged to have been founders of GFIC and GFHC (along with non-Defendant Rosemary McAndrew), and they both sit on the Board of Directors of these companies. Murch is also alleged to be the owner and President of CMI.

[9]     The Defendants, citing *Kruse v. AFLAC Int'l, Inc.*, 458 F.Supp.2d 375, 383 (E.D. Ky. 2006), assert that the individual Defendants are agents of GFHC / GFIC because they are members of these corporations' boards of directors, and that as agents of the signatories they may invoke the Arbitration Clause. However, Delaware has recognized that directors are not agents of corporations, but rather that they control the corporation. *See Arnold v. Soc. For Sav. Bancorp. Inc.*, 678 A.2d 533, 539-40 (Del. 1996).

selection clause.) Because of the close identity between the individual Defendants and GFHC / GFIC, these Defendants may invoke the Arbitration Clause. [10] As discussed in the previous section, Citadel's alleged status as the Plaintiff's co-employer makes its alleged misconduct intimately intertwined with that of the signatory Defendants. Accordingly, the nonsignatory Defendants may invoke the Arbitration Clause with respect to this count. Again, this is not a substantive determination of the arbitrability of Count III, but merely a determination that these Defendants are entitled to invoke whatever protections the Arbitration Clause affords.

### 3.   Count V[11]

Count V alleges tortious interference with the Plaintiff's employment contract on the part of Defendants Citadel, Weller, Coleman, Ignatowicz, and Clemons. "[I]t is 'fundamental' to any cause of action for tortious interference 'that the claim be directed against defendants who are not parties to the relationship.' . . .

---

[10]     The Plaintiff asserts in his supplemental brief that the individual Defendants cannot rely on their positions as directors of GFHC / GFIC to invoke the Arbitration Clause because they are being sued in their individual capacities for tortious and *ultra vires* conduct outside of the scope of their directorships. Plaintiff's Supplemental Brief at 9-10. The Complaint alleges that the individual Defendants were unlawfully and improperly disposed against Plaintiff because of his age and that, motivated by this improper prejudice, they coerced GFHC / GFIC to terminate his employment. While the individual Defendants' conduct may have been wrongful, and may even subject them to individual liability, the Complaint's allegations are nevertheless all related to actions taken by these Defendants at company and Board meetings. In particular, the Complaint alleges the GFHC / GFIC boards routinely excused the Plaintiff from executive sessions and made decisions that marginalized his role as a director and executive. The Plaintiff also singles out Defendants Weller, Penwell, and Murch as having made particular statements against him in GFHC / GFIC meetings. Because these actions were undertaken by company directors in company and Board meetings, and are alleged to have resulted in these companies firing Plaintiff, they are intimately intertwined with GFHC / GFIC's actions, and as such, the Plaintiff is estopped from denying the individual Defendants the benefit of the Arbitration Clause.

[11]     Counts IV (Fraud), VI (Quantum Meruit), and VII (Violation of Wage Payment Law) of the Complaint are addressed solely to contract signatories GFHC / GFIC, and thus are not subject to the analysis in this section.

'tortious interference developed under common law to protect parties to an existing or prospective contractual relationship from *outside* interference." *Trico Equipment, Inc. v. Manor,* Civ. No. 08-5561 (RBK/KMW), 2011 WL 705703, *4 (D.N.J., Feb. 22, 2011)(emphasis added)(other citations omitted). By its terms this count supposes a separation of identity and purpose between GFHC / GFIC and Citadel, Weller, Coleman, Ignatowitz, and Clemons. However, the Plaintiff specifically asserts the interrelation of the non-signatory Defendants with GFHC / GFIC. *See Ashall Homes*, 992 A.2d at 1249 (allowing officers and directors of signatory corporation, as parties closely related to the signatories, to invoke investment agreement's forum selection clause.) The alleged relation between these Defendants and GFHC / GFIC allows these Defendants to invoke the Arbitration Clause for purposes of this count.

## CONCLUSION

Under the terms of the Employment Contract, the Court must refer to the arbitrator the question of whether the claims stated in the Complaint are arbitrable. The Court takes no action at this time with respect to the Plaintiff's request to strike the Release. Should the arbitrator decide that some or all of the claims in the Complaint are outside the scope of arbitration, the Plaintiff may recommence proceedings in this Court, and the Court will review any requests for a further stay of proceedings at that time. The circumstances and relationships alleged in the Complaint entitle Defendants Citadel Group Representatives, Ltd., Citadel Reinsurance Company, Ltd., Citadel Risk Management, Inc., Citadel Risk Services, Inc., Combined Management, Inc., Robert Murch, Scott Penwell, Anthony

Weller, Arthur Coleman, Jack Ignatowitz, and James Clemons to invoke the Arbitration Clause contained in the Plaintiff's Employment Contract with respect to all claims stated against them in the Complaint. Accordingly, the Court **GRANTS** the Defendants' motion to stay this suit and compel arbitration.

It is further **ORDERED** that counsel file a status report every 6 months to inform the court about progress made regarding the pending arbitration.

**SO ORDERED**.

/s/ Nancy Torresen
United States District Judge

Dated this 26th day of July, 2012.